GEORGE M. FREEMAN, appellant,

v.

AGNES M. FREEMAN, respondent.

[Submitted July 7th, 1913.   Decided November 17th, 1913.]

Voluntary separation does not amount to desertion, nor can desertion be inferred from the mere fact that the parties do not live together.

On appeal from a decree of the court of chancery advised by Advisory Master Clarence S. Biddle.

*Mr. Herbert C. Bartlett,* for the appellant.

The opinion of the court was delivered by

TERHUNE, J.

This is an *ex parte* divorce suit.   The petition is filed by the petitioner to secure a divorce from his wife on the ground that she was guilty of adultery.   The adultery on the part of the wife was established.   The master, before whom the depositions were taken, advised the divorce, but the advisory master, following the case of *Rapp* v. *Rapp, 67 N. J. Eq. (1 Robb.) 236,* recommended a decree dismissing the petition on the ground that the petitioner had willfully, continuously and obstinately deserted the defendant for more than the statutory number of years last past, and was for that reason not entitled to a divorce from her on the ground of his wife's adultery.

The petitioner worked on the farm of Edward Martin, where the defendant, Martin's sister, lived.   Later, the petitioner left Martin's farm and went to work for one Burcham.   Edward Martin, it appears, had spent money bequeathed to the defendant, and devised a scheme of marrying her to the petitioner.

With his wife Martin went to Burcham's farm and there accused the petitioner of getting the defendant with child, telling him that he must marry the defendant and that it was a state's prison offence if he did not. Petitioner denied that he had ever had intercourse with the defendant, but they insisted that he had, and he would go to jail unless he married her. The petitioner was eighteen, and the defendant seventeen years of age at the time. The Martins would not allow the petitioner to stop and see his mother, but conducted him directly to Woodbury, to Edward Martin's home, where the defendant joined the party. They then immediately went to the mayor's office and the petitioner and defendant were married by that official. The four persons returned to the house of Edward Martin and the petitioner and defendant spent that night together. The next morning the petitioner left the defendant and returned to his mother's house at Millville, and has lived with or near her ever since.

From the time of the parting on the day after the marriage no request or attempt was made on the part of either to renew the marriage relationship. Shortly after the marriage the defendant visited the mother of the petitioner and informed her that neither she or her son wanted to get married—that she was not pregnant at the time of the marriage, as her brother insisted, and that she had done nothing that could cause such a condition. Defendant also consulted counsel and made a statement, in writing, under oath, alleging the same facts and circumstances as related by the petitioner and his mother. Whether the purpose of this visit was to have the marriage annulled is not disclosed. The attorney who took the affidavit died and no action was taken.

The case before us is not governed by *Rapp* v. *Rapp, supra.* In that case there was proof of a willful, continued and obstinate desertion. Here it appears that the separation was acquiesced in by the parties from the moment of its happening. Their entire line of conduct, subsequent to the marriage when freed from the surveillance of the Martins, shows a mutual determination to repudiate a situation that had been forced upon them. A

consideration of the facts and circumstances under which the desertion took place, the state of the mind of both parties, as well as their subsequent conduct, nowhere discloses on the part of the petitioner a willful and obstinate desertion as contemplated by the statute.

"A married partner who concurs in the other's going away cannot complain of the going. The just doctrine is that a party who has consented to a separation cannot while the consent continues convert the other's determination not to renew the cohabitation into desertion." *Bish. M. & D. 1609.*

A fair inference from the proofs before us is that the couple parted by mutual consent, and that after the parting there was no more disposition or refusal on the part of the petitioner to take his wife back than there was a willingness or disposition on her part to go back. The above view leads to a reversal of the decree below and the granting of a final decree of divorce to the petitioner and appellant.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER —14.