21 N.J. Super. 447 (1952)
91 A.2d 363
JOHN HOWARD GROVE AND EDNA S. GROVE, PLAINTIFFS-APPELLANTS,
v.
FRANCES JOAN GROVE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided September 25, 1952.
*450 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Frank B. Bozza argued the cause for the plaintiffs-appellants.
No one appeared for the defendant-respondent.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiffs appeal from that part of the judgment nisi entered in favor of the defendant on March 26, 1952 awarding custody of Jacklyn Marie Grove, the infant child of the marriage, to defendant. Jacklyn is now 8 1/2 years old. After the filing of the notice of appeal, the attorney for the plaintiff-father John Howard Grove obtained an order dated August 21, 1952, consented to by the attorneys for the defendant and the intervenor Edna S. Grove, who is plaintiff's mother, granting rights of visitation of the child to the father from Saturday 10:00 A.M. until Sunday 9:00 P.M. every week.
The child had been in the custody of the defendant-mother since April 1949. In December 1950 defendant permitted her mother to take the child on a visit to Florida. Jacklyn had been suffering from colds following a tonsilectomy operation, and defendant thought that the Florida climate would improve her health. The plaintiff and his mother then went to Florida where, on December 30, 1950, he filed a petition for a writ of habeas corpus against the maternal grandmother. After a hearing, the Florida court ordered the grandmother to surrender the custody of the child to the father, to be *451 returned to New Jersey "where the permanent custody of the said child shall be finally determined in the Court of Competent Jurisdiction in the State of New Jersey." Upon her return to New Jersey, Jacklyn was left in the custody of the paternal grandmother.
Before leaving for Florida, plaintiff filed a complaint in the Superior Court, Chancery Division, demanding that the maternal grandmother be restrained from keeping Jacklyn in Florida and compelled to return her to New Jersey, and that custody be awarded to the paternal grandmother, Edna S. Grove. The complaint alleged that the defendant mother was unable to care for the child properly, and that the maternal grandmother was a person of "ambulatory tendencies" and "a bad influence for and not in the best interests of the child." The mother answered denying the charges and, in turn, charged the father with carrying on a clandestine affair with a certain woman. In reply, plaintiff charged his wife with becoming involved with certain men. This custody action still awaits trial.
Thereafter plaintiff, on October 8, 1951, filed his complaint for divorce on the ground of defendant's desertion. Judgment was demanded dissolving the marriage between the parties and awarding plaintiff custody of the child. By her answer and counterclaim, defendant denied the desertion and demanded judgment of divorce because of plaintiff's adultery with a named co-respondent and his extreme cruelty. The counterclaim also demanded judgment awarding custody of the child to the counterclaimant. Plaintiff's mother, Edna S. Grove, then moved to be permitted to intervene in the divorce action on the ground that both parents were "unfit persons morally to have custody of the child." An order permitting intervention was entered January 11, 1952. The intervenor's complaint demanded judgment awarding custody of the child to her because the parents "utterly failed, neglected and refused" to maintain and support the child. The answer of the defendant-mother to intervenor's complaint *452 denied the allegations thereof and set up certain defenses.
After taking the testimony of the husband, wife, intervenor and their witnesses, the court entered a judgment dismissing the divorce complaint and the intervenor's complaint, and granting a divorce to the wife on her counterclaim. Custody of Jacklyn was awarded to the defendant-mother, with right of visitation in the plaintiff, and plaintiff was ordered to pay defendant $25 a week for the support and maintenance of the child, together with counsel fees.
Appellants attack the custody award because of the pending action for custody "under the doctrine of parens patriae," which had not been consolidated with the divorce action and which alleged numerous grounds of unfitness against the defendant-mother and the maternal grandmother. This contention is without merit. The divorce complaint, the counterclaim and the intervenor's complaint all raised the question of custody, and the court took testimony relating to the fitness of the several parties. Custody was squarely in issue in the divorce action. The fact that the custody action instituted by the father at the end of 1950 was not consolidated with the divorce action could not and does not vitiate the award of custody in the latter action. Concededly, no motion was ever made to consolidate the parens patriae custody suit with the present action. Unquestionably, the reason for this failure was that the precise issue of custody was presented for determination in the divorce action. The trial court cannot be charged with error for failing to consolidate the actions when it was never requested to do so.
Appellants next argue that the award of custody to the mother was erroneous because the maternal grandmother "surreptitiously, without consent or custodial authority, removed the child from its legal domicile in the State of New Jersey to the State of Florida." There is no substance in the argument. The trip to Florida was not surreptitious. Even if it were, the Florida decree attempted to establish a custodial arrangement for the time being. It may further *453 be noted that the maternal grandmother is not involved in the judgment here under attack; it awarded custody to the child's mother, and not to the maternal grandmother.
Appellants next argue that the trial court prejudged the custody question because the judge, in the midst of the trial and before evidence for the intervenor had been presented, said: "From what I have heard of this case so far, I am satisfied that the child belongs in the custody of the mother and I am inclined so to rule. I don't think it is necessary to go any further in that respect. The testimony that I will hear from now on, will be on the subject of the divorce either for desertion, adultery or extreme cruelty." Counsel for the intervenor immediately objected, stating that he wanted an opportunity to show that the natural mother was unfit morally and otherwise to have custody of the child. The court then stated that it would give him an opportunity to do so and directed that he proceed with his proofs. Thereafter, testimony was adduced as to the fitness of the mother to have custody of the child. Appellants, and particularly the intervening paternal grandmother, were not prejudiced by the extemporaneous remark of the trial judge.
Appellants contend that the court violated the spirit and policy of Rule 3:87-12 (a) relating to the custody of children. The rule requires that:
"In matrimonial actions where the issue of custody of children is contested the court shall, before final judgment or order, require an investigation to be made by the county probation office of the character and fitness of the parties, the economic condition of the family and the financial ability of the husband to pay alimony or support or both."
Although the rule was adopted January 1, 1952, it did not become effective until April 1, 1952.
Investigation through the county probation office into the character and fitness of the parties where custody is in issue is a salutary practice and one that was not unknown before the adoption of Rule 3:87-12. Matrimonial judges and advisory masters called for such investigations on their *454 own motion, in aid of an enlightened custody award. The trial court could well have required an investigation in this case. Not only did each parent and the paternal grandmother ask for custody, but the pleadings and the testimony are replete with charges and countercharges of unfitness of the parents. However, the court was under no mandate to order an investigation at the time of the hearing held on March 5, 1952, since Rule 3:87-12 had not yet become effective.
A review of the testimony leads to an affirmance of the award of custody to the defendant. The proofs are not of the quantum or quality required to demonstrate the unfitness of the mother. Appellants may not rely, as they attempt to do on this appeal, on the allegations of the pleadings in the custody action brought in December 1950, to sustain their claim that the mother is an unfit person to have custody of her daughter. Such unfitness must clearly be established by the proofs that were adduced at the divorce hearing.
The law is so well established as hardly to require citation of authorities, that in custody cases the welfare of the child is the paramount consideration. In a large measure the determination is within the discretion of the court, and each case must be determined on its own particular facts. In the absence of misconduct by the mother, it is customary to award to her the custody of a child of tender years. 10 New Jersey Practice (Herr, Marriage, Divorce and Separation) (1950), § 554, p. 582 et seq.; Matflerd v. Matflerd, 10 N.J. Super. 132 (App. Div. 1950), certif. den. 6 N.J. 398 (1951); In re Jackson, 13 N.J. Super. 144 (App. Div. 1951).
"Misconduct," as used in the statute (R.S. 9:2-4, as amended by L. 1948, c. 321), means such conduct as to deprive the parent of a moral right to the child's custody. Matflerd v. Matflerd, above; Carson v. Carson, 54 A. 149 (Ch. 1903). Although appellants sought to establish such misconduct on the part of the mother, the proofs fall far short of establishing it. They have not sustained the burden *455 of proof which was theirs of showing that the defendant-mother was unfit to have the custody of her child. On the other hand, we have the admission of the father that he was not in a position to assume responsibility for the child.
As between the mother and the intervening paternal grandmother the court will not, under the guise of ministering to the child's welfare, take her from her mother merely because the grandmother avows a love for the child and claims to be in a position to give the child greater advantages. Starr v. Gorman, 136 N.J. Eq. 105 (E. & A. 1945); In re Kirschner, 111 A. 737 (Ch. 1920); and see Giffin v. Gascoigne, 60 N.J. Eq. 256 (Ch. 1900). The court is anxious to maintain the natural relationship between parent and child whenever it can. Before the court will subordinate the legal right of the mother in this case to the desire of the paternal grandmother, the circumstances must be such that if the child is returned to the mother, the personal safety, morals, health and happiness of the child will be imperiled. Richards v. Collins, 45 N.J. Eq. 283 (E. & A. 1889).
This appeal could well have been dismissed because the appellants have violated Rules 1:3-1 and 1:3-2. Strict conformance with the requirements of Rule 1:3 relating to the printing of the record, briefs and appendices is required.
However, in view of the fact that this appeal involves the important question of custody of a child of tender years, and the further fact that respondent has not filed a brief or argued the appeal because of lack of funds, the court has on its own motion examined the pleadings and the typed transcript of testimony. This examination reveals that the judgment and pleadings have not been set out in their entirety; particularly, the counterclaim omits the acts of extreme cruelty with which the wife charges her husband, and the intervenor's complaint omits the allegation charging both parents with failure, neglect and refusal to maintain and support the child, although at all times able to do so.
*456 The record has undergone extreme truncation. Some 166 pages of testimony have been condensed into 20 pages of printed Appendix. A comparison of the transcript with the printed Appendix shows that important testimony, relevant to the issue of custody, has been supplanted by asterisks. Rule 1:3-2(f) requires that the Appendix "shall contain such parts of the record as are essential to the proper consideration of the issues, and which the appellant desires the court to read, including such portions which the appellant reasonably assumes will be relied upon by respondents in meeting the issues raised." (Italics ours.) For the respondent to have been able to meet appellants' arguments, she undoubtedly would have had to print her own Appendix containing the entire body of testimony.
Additionally, it may be noted that the arguments set out in the brief are based on facts not set out in the record. For example, there are references to proceedings before a municipal magistrate, to pleadings in the custody action which has not yet been heard and to the Florida proceedings, and there is material taken from the pleadings in the divorce action which does not find its reflection in the testimony. Ordinarily, this court would suppress the brief and order counsel to serve and file a proper brief. Rule 1:3-12.
The custody award will not be disturbed on this appeal. However, after carefully considering all the testimony, this court is of the opinion that the judgment below should be amended to include a provision directing the probation office of the county where the child resides with the mother to make periodic, comprehensive reports to the court as to the status of the custody. Rule 3:87-12(b). The first such report shall be made on or before November 1, 1952. The results of such investigation shall be reduced to writing by the probation office and the report filed with the court. Rule 3:87-12(d).
The action will be remanded for the purpose of amending the judgment as indicated above. Costs will be paid by the appellants.