28 N.J. Super. 400 (1953)
101 A.2d 48
JOSEPH M. FEDDOCK, PETITIONER-APPELLANT,
v.
NEW JERSEY REALTY COMPANY, RESPONDENT-APPELLEE. EDNA FEDDOCK, PETITIONER-APPELLANT,
v.
NEW JERSEY REALTY COMPANY, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1953.
Decided November 27, 1953.
*401 Before Judges CLAPP, GOLDMANN and EWART.
Mr. John J. Meehan argued the cause for petitioner (Messrs. Meehan Brothers, attorneys).
Mr. Joseph C. Paul argued the cause for respondent (Mr. Henry M. Grosman, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This is a workmen's compensation case. Petitioner appeals from the County Court which denied relief, reversing the Workmen's Compensation Division.
Something must be said, first, as to a violation of R.R. 1:7-1 (f). The rule makes it mandatory upon an appellant to include in his appendix those portions of the record which he "reasonably assumes will be relied upon by *402 respondents in meeting the issues raised." Appellant's appendix of 71 pages omits testimony favorable to respondent's case. Hence respondent at a cost of $400.55, was obliged to print an appendix of 108 pages and also to reproduce important exhibits.
Respondent asks to have costs imposed upon appellant's attorney under R.R. 1:7-2, but that rule does not apply to a violation of R.R. 1:7-1. We could strike appellant's brief and appendix, R.R. 1:7-9, and dismiss the appeal, Grove v. Grove, 21 N.J. Super. 447 (App. Div. 1952). Or we could require appellant to deposit the $400.55 as additional security for costs. So little having been said by the appellate courts on the matter, we have concluded to let the matter pass here, with a warning that we will not do so in another case.
The issues are of fact, first as to an alleged accident to the petitioner Joseph M. Feddock in May 1950 and, second, as to the connection between it and the tuberculosis of which he died August 13, 1951. Feddock, a janitor in an apartment house, swore in his petition that while he was "carrying and lifting coal, [he] strained his back and chest." His widow in her dependency petition, filed after his death, made the same statement under her own oath. On the stand, however, she told a different story, namely, that her husband was injured, not by straining himself, lifting coal, but by falling down, with an ash barrel of coal falling on him.
This testimony of hers is not only at variance with the petitions, but it is a rather unlikely story. More fully, her testimony was that there was a barrel of coal on a dolly, the top of the barrel being three feet from the floor and the base of the dolly being practically down to the floor. Her husband was behind the dolly, pushing it down a single step. He fell, landing on his back, hitting his spine on the step; and the barrel fell off the dolly on to his chest. In other words, after the dolly had gone down the step, he then fell down this step, managing to land in such a position that the barrel, when it fell off the dolly, struck his chest; and the peculiarity of the accident is that he hit the floor in this *403 position, so quickly that he was there before the barrel fell off the dolly.
The more improbable the story, the stronger the proofs must be if credence is to be given to it. See Vreeland v. Vreeland, 53 N.J. Eq. 387, 393 (Ch. 1895). The proofs here are certainly not strong.
Mrs. Feddock and Dr. McGovern are the only witnesses attempting to establish the accident. The latter called on Feddock after the accident and was told by Feddock (in fact the doctor not only testified to it, but put it in writing) that while Feddock was lifting something which the doctor thought was a barrel, it fell on Feddock's chest leaving a black and blue spot on the chest. Indeed Mrs. Feddock herself, notwithstanding the above-mentioned story, which she testified to with full details, said at another point in her testimony that Feddock was hurt "when he went to lift a barrel." Incidentally, at one point in the testimony she said she was right there when he fell, and at another point she said he was already lying there "when I went out," indicating she was not there when he fell.
There are other discrepancies. Mrs. Feddock testified that her husband could not do any work after May 1950 when this accident happened. On the other hand, respondent's representative who called frequently at the janitor's apartment was never informed of an accident, and indeed always found Feddock available from May 1950 until September 30, 1950 when he was fired. Besides, Feddock himself swore in his petition (contrary to his widow's testimony that he could not work after May 1950) that it was on October 2, 1950 that he was compelled to stop work because of this injury in May 1950. In a claim for disability benefits made under penalties of perjury, Feddock stated that the first day on which he was too sick to work was October 2, 1950, and this was corroborated (except that the date was fixed at October 1, 1950) by Dr. McGovern's certificate on the claim. It was also corroborated by another claim for disability benefits filed later by decedent, also with Dr. McGovern's statement attached. However these claims for disability benefits are *404 at variance with Feddock's workmen's compensation petition, in that in these claims Feddock states he was compelled to stop work on October 2, 1950, not because of the above-mentioned accident, but because (as stated in one claim; the other was somewhat the same) of "strained muscles from hips down to toes." Dr. McGovern in his certificates, supporting the claims for disability benefits, diagnoses this same malady commencing October 1, 1950 as multiple neuritis and osteoarthritis.
Feddock died of pulmonary tuberculosis and it is claimed that it was brought on or aggravated by the accident. Mrs. Feddock testified that when she called Dr. McGovern in May 1950 after the accident happened, her husband was spitting blood. The doctor, however, said he did not see any spitting of blood or get any history as to it.
Dr. McGovern testified on the stand as to the causal relationship between the accident and the death through tuberculosis. On the other hand, he told a member of the bar who interviewed him after Feddock's death, that "not by the nearest stretch of the imagination could he say there was any [such] causal relationship." Furthermore he told another investigator who independently called him on the matter, that there was no tie-up between the death of Feddock and any possible accident; that Feddock died of natural causes.
It is unnecessary to review this record further. The case, both as to the accident and as to the connection between it and the tuberculosis, is so infected with discrepancies as to leave us entirely in doubt as to what the true facts are.
Affirmed.