STEFAN ELIASZ AND PEARL ELIASZ, HIS WIFE, PLAIN-
TIFFS-APPELLANTS, v. BROADWAY BANK AND TRUST
COMPANY, A BANKING CORPORATION OF THE STATE
OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 25, 1960—Decided June 13, 1960.

Before Judges GOLDMANN, FREUND and HANEMAN.

*Mr. Andrew Mainardi, Jr.,* argued the cause for appellants (*Messrs. Mainardi & Mainardi,* attorneys).

*Mr. Leonard I. Garth* argued the cause for respondent (*Messrs. Berman & Garth,* attorneys).

The opinion of the court was delivered by
HANEMAN, J. A. D.   Plaintiffs appeal from a summary judgment dismissal of their action seeking the recovery of an alleged overpayment on a promissory note prior to maturity consisting of a claimed right to rebate for prepaid interest.

Counsel for plaintiffs has presented a truncated record consisting of a notice of appeal, complaint filed in the District Court, a short portion of the transcript of the argument on the motion (apparently three short paragraphs out of the trial judge's opinion, which would seem to cover at least two pages), excerpts from the clerk's judgment docket, copies of a note and receipts of payments—in all covering eight pages. The defendant's appendix contains an affidavit of defendant's counsel, stipulation executed by plaintiffs' and defendant's counsel, contract between Pura-Tex Stone & Construction Co., Inc., and plaintiffs' mortgage from plaintiffs to Pura-Tex, and assignment of that mortgage to defendant, in all covering 13 pages.

Although no motion was made by defendant addressed to the inadequacy of the record, we call attention to the impropriety of plaintiffs' conduct. Plaintiffs should have reasonably assumed that defendant would rely upon each of the exhibits included in its appendix and plaintiffs should therefore have included them in their appendix, *R. R.* 1:7–1(*f*), made applicable to the Appellate Division by *R. R.* 2:7–1. Additionally, in their brief plaintiffs included a statement of facts covering five pages, consisting of a recital of unsworn facts not appearing in the record, under the guise of delineating what they would have proved at the trial. A large part of plaintiffs' factual argument deals with this recital and additional matters *dehors* the record. We cannot ignore this total disregard of the appellate rules without commenting that such conduct is deplorable. For the purpose of this opinion we shall restrict ourselves to those portions of the record properly before us as they appear in plaintiffs' and defendant's respective appendices, except as may hereafter be noted.

Prior to consideration of the merits of the appeal, some further comment is required concerning plaintiffs' brief. Plaintiffs' reference to the suggestion of the court, on the day set for trial, that if defendant desired to make a motion for a judgment on the pleadings on the ground

that the complaint did not set forth a claim upon which relief could be granted, it should be heard in chambers before a jury was chosen, seeks to convey an impression of judicial impropriety or prejudice. We hasten to point out that such a motion should have been made out of the presence of the jury and that there was no impropriety in the court's action. Also, plaintiffs' counsel was not taken by surprise, since he admits in his brief that defendant's counsel had advised him some time before the trial that "his client was under no duty to rebate." Nor did he then make any objection to the procedure. Any inference that plaintiffs' counsel was taken unawares or that the proceedings were in the nature of a star chamber session is completely without foundation, and reference thereto for colorable emphasis will be ignored.

On July 1, 1957 plaintiffs entered into a contract with Pura-Tex Stone & Construction Company, Inc. (Pura-Tex) for the furnishing of the following labor and materials on premises owned by them and known as 140 Stevens Avenue, Little Falls:

"1. Renail all loose present existing siding on exterior walls of house.

2. Replace any such badly rotted siding with suitable lumber as necessary.

3. Caulk four parts of window and door frames with special compound, using pressure gun.

4. Cover said wall with alum. clapboard (green).

5. Apply first grade siding to said exterior walls of house as follows: Lower Half . . . . . Upper Half . . . . .

6. Finish off window and door frames with special mouldings.

7. All corners to be finished with special caulk and seal all doors and windows.

8. All work to be done in a workmanlike manner.

Remarks: Tighten all loose boards. Cover entire exterior with alum. foil. Alum. trim around all doors and windows. Then cover entire exterior with alum. clapboard."

Pura-Tex as well guaranteed the labor and materials for 70 years.

On July 9, 1957 plaintiffs delivered a promissory note, as required by the above contract, in the face amount of

$2,218.80 payable in monthly installments of $36.98 over a period of 60 months, which note was secured by a mortgage on the Little Falls premises. The note contained no provision permitting payment in any fashion other than by the monthly installments over a 60-month period. Shortly thereafter, Pura-Tex endorsed said note and assigned the mortgage to defendant. Plaintiffs allege that on September 23, 1957 they paid defendant $1,000 on account of their indebtedness; on October 28, 1957 they paid $685; on November 1, 1957 they paid $533.80, a total of $2,218.80. Defendant thereupon cancelled the note and mortgage. Defendant disputes only the amount of the last above listed payment, alleging that plaintiffs paid only $101.10, the balance of $432.70 never having been paid, but representing a credit allowed by it for rebate of prediscounted interest. Defendant, although asserting, as noted, that it credited plaintiffs in that amount, denies that plaintiffs are as a matter of fact and law entitled to any rebate. It was upon this latter theory that the court granted a summary judgment, conceiving that the basic and preliminary question involved was whether plaintiffs were in any event entitled to a rebate.

Plaintiffs argue alternatively that they are legally entitled to a rebate by virtue of (1) *N. J. S. A.* 17:16*B*; (2) contract, or (3) *quasi*-contract.

█ Plaintiffs did not plead, nor did they argue, either in the trial court or in their brief on appeal, that defendant's conduct constituted a waiver of its right to demand payment in strict compliance with the terms of the note. In any event, we do not perceive any factual basis in the brief or record upon which such a contention could be bottomed. Any suggestion that the issue of waiver may be present because of a telephone conversation between plaintiffs' counsel and some officer of the bank, arises from the following gratuitous statement of plaintiffs' counsel contained in his brief. No such statement appears anywhere in the record:

"\* \* \* On Friday, November 1st, therefore, in the morning hours, plaintiff, Pearl Eliasz came to the offices of her attorney, Andrew Mainardi, 23 Hamilton Street, Paterson, New Jersey, and explained to Mr. Mainardi the fact that notwithstanding prompt payment of her debt to the bank, she was receiving no credit from the interest originally charged. Mr. Mainardi thereupon called the defendant bank where he spoke to a representative handling FHA Home Modernization loans, under the mistaken impression that the Eliasz loan was an FHA loan. That person said that the plaintiffs should be entitled to a rebate and Mr. Mainardi advised Mrs. Eliasz accordingly."

We consider that the statement should be completely ignored. However, even if proved, these facts could not serve to constitute a waiver of defendant's rights. The most that can be concluded therefrom is that *plaintiffs'* counsel misunderstood the nature of plaintiffs' obligation and erroneously advised them as to their rights. The gist and effect of the alleged statement by the bank employee is that if plaintiffs' mortgage were an FHA Home Modernization loan they would be entitled to a credit for prepaid interest. Plaintiffs do not argue that the bank consciously relinquished a known right or that they were advised by the bank that they would receive credit for prediscounted interest *on this loan* upon prepayment.

If merely for the sake of this opinion all of the unsubstantiated, unsworn "facts" included in plaintiffs' brief and not appearing in the appendices were considered as part of the record and presumed to be true, they would be insufficient to give rise to the conclusion that defendant had waived its right to demand and receive full payment of its debt. Nowhere do there appear any "facts" nor do plaintiffs argue that the payment was made "pursuant to an arrangement with the bank respecting unearned interest."

Defendant does not argue that plaintiffs' payments were voluntary.

## I.

Plaintiffs argue that as the contract from which the note sued on emanated was one for the sale of aluminum

siding—even though Pura-Tex was obligated to affix the siding to an existing building—it constituted a retail installment contract as defined in *N. J. S. A.* 17:16B–1, and they are entitled to a refund credit for payment before maturity as provided in *N. J. S. A.* 17:16B–7.

*N. J. S. A.* 17:16B–1 reads in part:

"(a) Goods means all chattels personal having a cash price of three thousand dollars ($3,000.00) or less but not including money or things in action.

(b) Retail installment contract means any contract entered into in this State evidencing an agreement to pay the *retail purchase price of goods*, * * * in installments over a period of time and pursuant to which title to or a lien upon *the goods* is retained or taken by the retail seller * * *. This term includes a *chattel mortgage, conditional sale contract*, or *other similar instrument* and any retail contract for the bailment or leasing *of goods* by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of *such goods* upon full compliance with the terms of such retail contract.

(c) Retail seller means a person who sells or agrees to sell one or more *articles of goods* under a retail installment contract to a retail buyer.

(d) Retail buyer means a person who buys or agrees to buy *one or more articles of goods* from a retail seller not for the purpose of resale and who executes a retail installment contract in connection therewith.

(e) Sales finance company means and includes any person engaging in this State in the business, in whole or in part, of acquiring retail installment contracts from retail sellers by purchase, discount or pledge, or by loan or advance to a retail seller on the security thereof, or otherwise. $^{c}$

* * * * * * * *

(g) Time price differential means the amount in excess of the cash price of the goods agreed upon by the retail seller and the retail buyer, to be paid by the retail buyer for the privilege of purchasing the goods under the retail installment contract." (Emphasis supplied)

"17:16B–7. Payment in full before maturity; refund credit.

Notwithstanding the provisions of any retail installment contract to the contrary, any retail buyer may satisfy in full at any time before maturity the debt of any retail installment contract and in so satisfying such debt shall receive a refund credit thereon for such anticipation of payments. The amount of such refunds shall rep-

resent at least as great a proportion of the time price differential, less any insurance premium and an acquisition cost of ten dollars ($10.00), as the sum of the periodical time balances, after the date of prepayment, bears to the sum of all the periodical time balances under the schedule of payments in the original contract. Where the amount of the credit for anticipation of payments is less than one dollar ($1.00), no rebate need be made. *L.* 1948, *c.* 419, *p.* 1656, § 7."

As above quoted, it is apparent that the statute applies to a "retail buyer * * * who buys or agrees to buy * * * goods from a retail seller * * *." A retail seller is one "who sells or agrees to sell one or more articles of goods * * *." "Goods means all chattels personal * * *." The act applies to installment contracts and includes "a chattel mortgage, conditional sale contract, or other similar instrument and any retail contract for the bailment or leasing of goods * * * by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods * * *."

Clearly, the statute contemplates the retail sale of personalty as distinguished from a contract for the furnishing of labor and materials in connection with the construction of improvements to realty. This construction is highlighted by the detailed list of applicable types of transactions in which title is retained or a lien obtained by the seller. In each instance the transaction described is one typically and solely applicable to personalty. In the matter *sub judice,* title to the aluminum siding was not retained by Pura-Tex nor was a separate or distinct lien obtained thereon. The lien which the seller obtained was on the realty, including existing improvements and the improvements contemplated under the contract.

The cited statute does not apply to contracts concerned with the furnishing of labor and material for the improvement of realty, and hence the contract, promissory note, and real estate mortgage do not come within the purview of *N. J. S. A.* 17:16B–1 *et seq.* To hold conversely, as plaintiffs suggest, would cause every building construction contract

where payment was to be made in installments to fall within the confines of the statute.

## II.

Plaintiffs further argue that although there is no express provision for a prepayment rebate or credit in the promissory note, it is the recognized custom and usage of this defendant and other banking institutions in the general geographical area in which defendant has its banking house to allow such credit. They rationalize that "where a written contract * * * is silent as to a contingency which later occurs, the law will imply the contract term which was the intention of the parties, as shown by the surrounding circumstances. Evidence of such mutual intention may be supplied by a showing of the custom or usage of the trade in like circumstances so long as it is certain, uniform, and clearly established." They conclude, therefore, that a factual issue was raised which should be resolved by a verdict of the jury and hence that the court erred in granting a summary judgment.

Plaintiffs' argument is fallacious in several respects. First, they do not assert that it was the custom of building contractors like the original payee (Pura-Tex) to give any such credit. They merely assert that it is a custom of local banking institutions "to give a rebate of interest when a loan is prepaid in advance." The contract *sub judice,* including the note and mortgage, was between plaintiffs and Pura-Tex, and not with defendant. Defendant made no direct loan to plaintiffs, but rather received the obligation sued upon by way of discount for Pura-Tex and upon endorsement by Pura-Tex, subsequent to the execution and delivery by plaintiffs. The question of custom in loan transactions with banks is therefore irrelevant here.

Second, the provisions appearing on the face of the note are clear and unambiguous. It is a contract under which plaintiffs agree to pay "60 consecutive monthly installments

of $30.98 each (except that the final installment shall be the difference between the amount of this note and the sum of the preceding installments), the first to become due September 9, 1957, balance of the installments to be paid on the same date of each month thereafter until paid [in full], with interest after maturity of entire balance as herein provided at the highest legal rate."

It must be recognized that the testimony of usage or custom is admissible where such usage or custom is the "key to the contract without reference to which the intent of the parties cannot be ascertained. It explains the meaning or sense of the language of the contract." *Steward and Metler v. Scudder*, 24 N. J. L. 96 (*Sup. Ct.* 1853); *Manhattan Overseas Co. v. Camden Co. Bev. Co.*, 125 N. J. L. 239, 244 (*Sup. Ct.* 1940), affirmed 126 N. J. L. 421 (*E. & A.* 1941); *Public Service Mutual Insurance Co. v. White*, 4 N. J. Super. 523 (*App. Div.* 1949). Such proof may not, however, be received to contradict, vary or add to the express terms of a contract. *Steward and Metler v. Scudder, supra; Wallman v. United Casualty Co.*, 147 F. 2d 636 (3 *Cir.* 1945). Here plaintiffs are seeking to supplement the clear and unambiguous terms of the contract by incorporating an alleged usage or custom which would contradict the express language thereof. The proffered proof would in any event be inadmissible.

Furthermore, where custom is relied on to explain a contract, it must be specially pleaded. *Johnson v. Hoffman*, 7 N. J. 123, 133 (1951). Plaintiffs failed to so plead.

### III.

Plaintiffs argue lastly that they are entitled to the claimed credit upon the theory of *quasi*-contracts in order to prevent an unjust enrichment of defendant, citing *Borough of West Caldwell v. Borough of Caldwell*, 26 N. J. 9, 28 (1958). A *quasi*-contract is created by law without regard to expressions of assent by either words or acts.

There is nothing inequitable, unreasonable or illegal about the terms of the promissory note. *Cf. Bloomfield Savings Bank v. Howard S. Stainton and Co.*, 60 *N. J. Super.* 524 (*App. Div.* 1960).

The transaction here involved is of a nature commonly undertaken by commercial banking institutions. The plaintiffs do not assert any fraud in connection with the original contract involving the note. To grant the relief sought by plaintiffs would result in defendant's deprivation of the benefit of an investment obtained as the result of a contract voluntarily entered into by plaintiffs.

Defendant has not been unjustly enriched nor is it guilty of unconscionable conduct. All that it seeks is payment in strict accordance with the terms of the promissory note. It follows that the theory of *quasi*-contracts is inapplicable in the face of the express contractual terms.

Affirm.

FREUND, J. A. D. (dissenting). I am in substantial accord with the majority's reasoning that the defendant bank is not bound to rebate unearned interest by reason of statute, by usage or custom or by principles of *quasi*-contract. I disagree, however, with the holding that there is no material factual issue in relation to whether the bank waived its right to interest or was entitled to interest beyond the date of payment of the debt. I am of the further opinion that it is not significant that plaintiffs did not plead that the defendant's conduct constituted a waiver.

Plaintiffs' complaint was dismissed on defendant's motion, apparently made in the chambers of the district court judge, before counsel were permitted to proceed with the selection of a jury. The majority points out the various respects in which plaintiffs' appellate presentation fails to conform to the rules of court. Quite apart from the circumstance that their argument is not supported by record references, the fact is that defendant's counsel consented at oral argument to our considering the proffered proofs as if properly included

in the record. Plaintiffs represent that they would have proved at the trial that, among other things, on November 1, 1957, four months after the contract with Pura-Tex was executed, their attorney telephoned the bank and was advised by a "representative handling FHA Home Modernization loans" that "plaintiffs should be entitled to a rebate" of unearned interest if they satisfied their five-year monthly installment obligation in full in advance of maturity. On that same day plaintiffs went to the bank to pay the outstanding balance on their note, under the impression that they would thereafter receive the interest rebate in the mail. Their attorney later assured them that "if the bank said she would receive a rebate, she would, probably in a few days."

Approximately 15 months later, plaintiffs returned to the bank and told two of its officers what had happened. Both of these officers asserted that they had in fact already received a rebate of $432.70. They accused plaintiffs of having poor memories and insinuated that they were trying to claim money to which they were not entitled. Two months later, plaintiffs commenced this action. They have four bank receipts indicating they paid a total of $2,218.80. It is the position of the bank that, regardless of the receipts plaintiffs have, they actually paid only $1,786.10, and that because they prepaid the obligation their account was credited with the payment of the balance. As is stated in the bank's brief,

"It has always been and is the defendant's contention that on November 1, 1957 the defendant Bank had credited plaintiffs' account with the sum of $432.70 in computing the balance due on plaintiffs' note and had received a total of $1,786.10 in payment of the $2,218.80 note."

It ought to be noted that this contention could easily be verified by the bank's records if it is the fact.

It is of course a general rule that, absent a prepayment clause, a debtor has no greater right to compel his creditor to accept payment before it is due than the creditor has to

compel payment before that time. See, *e. g.*, Annotation, 17 *A. L. R.* 866 (1922). But it is also true that the creditor may waive his rights and accept payment before maturity or otherwise agree with the debtor to forego interest in return for an early payment. 40 *Am. Jur., Payment,* § 10, *p.* 719, text at *n.* 20 (1942); 47 *C. J. S. Interest* § 29, *p.* 40 (1946).

Summary judgment is appropriate only where the record shows palpably that there is no issue as to any material fact. *R. R.* 4:58–3; *Frank Rizzo, Inc. v. Alatsas,* 27 *N. J.* 400, 405 (1958). Application of that rule in this case requires that the circumstances attending plaintiffs' prepayment of the debt be fully explored at trial. The bank's contention that the unearned interest was credited to plaintiffs' account at the time is confirmation of the view that an agreement pertaining to prepayment may have been reached or that such payment may have been made pursuant to defendant's waiver of its contractual rights. My colleagues are of the view that the telephone conversation with the bank's representative does not indicate that the defendant consented to or induced an early payment of the debt; they attribute the prepayment to a mistake on the part of the attorney in thinking plaintiffs had received an FHA loan. My opinion, however, is that the proffered proofs regarding this conversation can reasonably support the conclusion that plaintiffs were induced to make an early payment of the debt, not by a mistaken impression of their attorney, but by the fact that the bank representative said unqualifiedly, and without regard to whether it was an FHA loan, that these plaintiffs should be entitled to a rebate. How else explain the present claim of the bank that plaintiffs received a $432.70 credit that very afternoon? It is unlikely that the bank would suddenly and voluntarily extend such a credit. Needless to say, our present difficulty in reconstructing what transpired between plaintiffs and their attorney and the bank would be obviated if the issues had been illuminated by testimony. The fact that plaintiffs did not plead waiver in their com-

plaint does not lead to a contrary result. Waiver need only be set forth affirmatively "in pleading to a preceding pleading." *R. R.* 4:8–3. See also 56 *Am. Jur., Waiver,* § 19, *p.* 120 (1947). In district court practice, a written answer is not necessary, *R. R.* 7:5–4(*a*), and the record on appeal does not contain one or state that such pleading was filed. In any event, notwithstanding that the waiver theory was not urged in the district court or on appeal, its pertinence is so obvious in the factual setting presented as to require a trial on that or a similar theory as a matter of substantial justice. Plaintiffs satisfied their debt within four months; we must assume for present purposes that the bank has collected five years' interest. I am of the view that the case should not be summarily disposed of but that plaintiffs should be afforded an opportunity to present evidence to support the hypothesis either that they prepaid pursuant to an arrangement with the bank respecting unearned interest or that they did so as a result of waiver, express or implied, on the defendant's part, and, further, that they did not in fact receive the credit the bank contends it gratuitously and without prearrangement extended to them.

I would reverse for trial.