64 N.J. Super. 29 (1960)
165 A.2d 305
H. HARRISON HUSTER, PLAINTIFF-RESPONDENT,
v.
HATTIE S. HUSTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 1960.
Decided November 22, 1960.
*32 Before Judges GOLDMANN, HANEMAN and FOLEY.
Messrs. Jeffers, Mountain & Franklin, attorneys for appellant (Mr. Albert B. Jeffers, of counsel).
Mr. Charles M. Grosman, attorney for respondent.
GOLDMANN, S.J.A.D.
Plaintiff brought an action for divorce in two counts. The first charged his wife with desertion in February 1954. The second alleged that in November 1957, and thereafter through the months of January to November 1958, inclusive, she committed adultery with a named corespondent at her Madison, N.J., home and in Nantucket, Mass. The answer denied both charges and related three occasions when plaintiff allegedly left defendant, the last time being in 1954, and that she thereafter "attempted to reconcile her marriage with him but that he obstinately refused to live with her any longer; that he wanted her to secure a Reno divorce." Defendant also alleged that plaintiff had never made any effort toward reconciliation, but that she has always desired to reconcile the marriage.
After a full hearing, the Chancery Division judge made oral findings of fact and conclusions of law in which he stated that he was going to dismiss the desertion count but that the proofs justified a finding of adultery. At this point in the oral opinion defendant's counsel inquired whether the trial judge was going to comment on the defense of desertion. The judge said he would not. Judgment nisi for divorce on the ground of adultery was thereupon entered in *33 plaintiff's favor, and the cause of action for desertion dismissed.
On this appeal defendant does not contend that the court's finding of adultery was against the weight of the evidence. Instead, she urges two points: (1) the trial court erred in refusing to make findings of fact with respect to the recriminatory defense of desertion, and (2) it was error to refuse to permit her to adduce expert medical testimony with respect to her mental condition at the time of the alleged marital offense.
At the outset it should be noted that defendant has presented a much abbreviated appendix which includes only the pleadings, judgment nisi, notice of appeal, and some seven pages of testimony fragments. This does not represent even a minimal compliance with R.R. 1:7-1(f). The most glaring omission is the absence of the trial judge's findings of fact and conclusions of law upon which plaintiff must and does rely on this appeal. Plaintiff has consequently been put to the trouble and expense of preparing an appendix adequate to the disposition of the appeal, totalling over 100 printed pages. See Eliasz v. Broadway Bank & Trust Co., 62 N.J. Super. 1, 4 (App. Div. 1960); Morrone v. Morrone, 44 N.J. Super. 305, 308 (App. Div. 1957); Feddock v. N.J. Realty Co., 28 N.J. Super. 400, 402 (App. Div. 1953); and Grove v. Grove, 21 N.J. Super. 447, 455 (App. Div. 1952), for our criticism of inadequate appendices. Because of the State's interest in the marriage relation and defendant's apparently limited means, we shall proceed to deal with the case on the merits instead of suppressing her brief or dismissing the appeal.
Under defendant's first point the argument is that the court disregarded the requirements of R.R. 4:53-1, which provides that in a contested action tried upon the facts without a jury, as here, "the court shall find the facts specially and state separately its conclusion of law thereon * * *." R.R. 4:93-1 makes that rule applicable in matrimonial actions. Franzoni v. Franzoni, 60 N.J. Super. 519 *34 (App. Div. 1960), and Testut v. Testut, 32 N.J. Super. 95 (App. Div. 1954), are cited in support of this contention. In those cases the trial judge failed to make any findings of fact or to state any conclusions of law whatsoever. He did here, except in the one aspect of which defendant complains.
It may reasonably be inferred that the trial judge was indicating that he saw no merit in the alleged defense of desertion, when counsel called his attention to it and he refused to comment on it. It undoubtedly would have been better had the court specifically rejected the defense, briefly stating his reason. His refusal to comment on this issue when he clearly knew of it, coupled with his detailed findings and conclusions on the adultery aspect of the case, is fairly persuasive of the fact that he had concluded that the defense of desertion was not available to defendant.
Be that as it may, the record is so clear and complete as to permit us to exercise our original fact-finding jurisdiction under R.R. 1:5-4. Everything points to the conclusion that the claimed defense of desertion is without merit.
The doctrine of recrimination found its way into Roman and ecclesiastic law from the Mosaic law, and ultimately came to America as unwritten law. In New Jersey the doctrine is statutory insofar as adultery stands in bar of a charge of adultery. N.J.S. 2A:34-7. However, the statute is not exclusive; it does not nullify the unwritten law. Although severely criticized in other quarters, and supplanted in some states by the doctrine of "comparative rectitude," see 11 N.J. Practice (Herr, Marriage, Divorce and Separation) (2d ed. 1950), § 791, p. 204, the recrimination doctrine is firmly embedded as part of our statutory and unwritten law. Recrimination is an affirmative offense which must be alleged by answer, ibid., § 1191, p. 413, and the recriminatory charge must amount to the commission of a matrimonial offense. Reeves v. Reeves, 106 N.J. Eq. 532 (Ch. 1930), affirmed 109 N.J. Eq. 136 (E. & A. 1930); Cilente v. Cilente, 104 N.J. Eq. 605, 606 (Ch. 1929).
*35 Although loosely stated in narrative form, we consider defendant's answer as having set up the matrimonial offense of desertion by way of recrimination. It is now settled that if a plaintiff has been guilty of willful, continued and obstinate desertion for the statutory period, which desertion has accrued as a cause of action prior to the time when the act of adultery was committed by defendant, defendant may set up such accrued cause of action for desertion in bar. Young v. Young, 94 N.J. Eq. 155 (E. & A. 1922); Rapp v. Rapp, 67 N.J. Eq. 236 (Ch. 1904). If, during the statutory period, defendant has consented to the separation, or the separation is by mutual consent, there cannot exist a desertion which may be pleaded in recrimination. Freeman v. Freeman, 82 N.J. Eq. 360 (E. & A. 1913); Cilente v. Cilente, above. Furthermore, it has been held that the cause of action for desertion in favor of a defendant must have accrued at a time which antedated defendant's commission of the act of adultery. A plaintiff's desertion may have been willful, continued and obstinate originally, but if before the expiration of two years of such desertion defendant commits an act of adultery, plaintiff's desertion, whether simple or constructive, ceases. See 11 N.J. Practice, above, § 791, pp. 205-207.
It is clear from the record that defendant utterly failed to establish desertion on the part of her husband. The parties had apparently separated January 28, 1954, and thereafter lived separate and apart by mutual agreement, the terms being set out in a property and separation agreement dated June 14, 1954. Defendant was the only witness who testified as to plaintiff's alleged desertion. She said she had sought reconciliation with him, but that he would not come back to her. In her answer she had stated that after plaintiff left in January 1954 for the last time, she attempted to reconcile her marriage with him. Her testimony was confused as to the times she attempted to do so. At first she said that she spoke to him shortly after their separation, and the last time she asked him to return was, *36 she thought, in May of that year. Asked whether she had ever discussed reconciliation with her husband after June 14, 1954, the date of the separation agreement, she said, "I can't tell you." Then she indicated that she had talked reconciliation in 1955.
There was no corroboration whatever of defendant's testimony to establish a willful, continued and obstinate desertion by plaintiff, either simple or constructive, before the parties separated or after. Recalled to the stand, plaintiff flatly denied any attempt at reconciliation by his wife. It would appear that having mutually agreed in writing to live separate and apart, defendant was satisfied to accept the property settlement, support and maintenance, and custody arrangements provided for in that agreement. The voluntary separation of the parties did not, of course, amount to desertion, so as to bar plaintiff's right to divorce on the ground of adultery. Nor can desertion be inferred from the mere fact that the parties did not live together. Freeman v. Freeman, above, 82 N.J. Eq. 360 (E. & A. 1913). Upon proof of separation by mutual consent, it became incumbent upon defendant to establish that a desertion, willful and obstinate, occurred thereafter and continued for the statutory period. Hers was the burden of showing that she in good faith sought to resume cohabitation. Glenn v. Glenn, 142 N.J. Eq. 625, 627 (E. & A. 1948). She failed to sustain that burden.
We turn to defendant's second argument on appeal  that it was error for the trial judge to refuse to permit defendant to adduce expert medical testimony with respect to her mental condition at the time of the alleged adultery. The acts charged occurred at the end of 1957 and throughout most of 1958. At the hearing defendant called a Dr. Parry as a witness. His speciality was internal medicine and he said he was Chief of Alcoholic Service at a Morristown hospital. As a treating physician he first saw defendant January 28, 1960, and thereafter attended her daily while she was in the Morristown hospital from January 29 to March 2. *37 When he was asked on direct examination what her condition was when he saw her on January 28, there was an objection. Defendant's attorney then made a proffer of proof that the diagnosis disclosed "a condition which existed as the result of her drinking prior to the commencement of the action," and cited Kretz v. Kretz, 73 N.J. Eq. 246 (Ch. 1907), in support. That case held that the accused wife's mind was so far impaired at the time of the alleged adultery that no decree could properly be made against her based upon the acts charged.
What defendant obviously was trying to establish through Dr. Parry was that she had been unable to comprehend the nature of her conduct at the time of the alleged acts of adultery in 1957 and 1958, and therefore such adultery could not constitute a valid marital offense on which a divorce could be founded. In the course of an extended colloquy counsel indicated that he wanted Dr. Parry's diagnosis in January 1960 as part of a hypothetical question which he was going to address to the witness and which would include facts elicited on direct testimony as to her drinking during prior years. In sustaining the objection plaintiff's attorney had made, the trial judge commented that he had asked defense counsel whether he was going to present proof as to defendant's mental condition in 1958, and had received a "no" answer.
Counsel subsequently sought to put Dr. Parry back on the stand and qualify him as an expert witness with respect to alcoholism, his testimony to be subject to being connected up. There was an objection because any testimony that defendant was an alcoholic when she committed the alleged acts of adultery would not excuse her. The objection was sustained.
It is manifest that the doctor could testify to no more than that defendant was a chronic alcoholic for some time past, as indicated by her condition in January 1960. But even assuming she was a chronic alcoholic during that period, this testimony would not be relevant to her mental or physical condition at the time she committed the alleged *38 acts of adultery. The evidence adduced on plaintiff's case indicated quite clearly that she was not constantly under the influence of liquor, if at all. And even if she were under the influence at the time when the alleged acts of adultery occurred, this would be insufficient to excuse them. It must be shown, according to Kretz, that defendant's mental condition was such as might technically be defined as insanity  a condition "where no one could properly expect from her the complete exercise of a rational judgment." And see Bailey v. Bailey, 115 N.J. Eq. 565 (E. & A. 1934); 11 N.J. Practice, above, § 793, p. 209; Annotation, "Insanity as affecting right to divorce or separation on other grounds," 19 A.L.R.2d 144, 174 et seq. 1951.
It was incumbent upon defendant to establish at the least that at the time of her alleged adultery her mind was so far affected by her use of alcohol that she could not exercise a completely rational judgment. We need not decide precisely what state of mind will excuse adultery in a divorce action; it is sufficient to note that the medical expert offered by defendant could not shed any direct light on her mental condition at the time of the offenses. Moreover, there is a real question as to whether he was qualified to do so. Is an expert in internal medicine and alcoholism qualified to give expert information as to whether a person could exercise a rational judgment at a particular time? It would seem that a psychiatrist's testimony would be appropriate and enlightening. The vice-chancellor in Kretz indicated an awareness of this when he said that neither of the physicians who there testified professed to be specialists in mental diseases. 73 N.J. Eq., at page 248.
The proffered testimony of Dr. Parry was properly excluded by the trial judge, if for no other reason than remoteness. Although defendant's attorney urged that he could connect up Dr. Parry's diagnosis, no "connecting witnesses" were called or offered.
Affirmed.